**ORIGINAL**

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JAN 06 2022

at __11__ o'clock and __00__ min. __a__ M  *oyu*
MICHELLE RYNNE, CLERK

JUDITH A. PHILIPS
Acting United States Attorney
District of Hawaii

MICHAEL D. NAMMAR
MICAH SMITH
MARK A. INCIONG   CA BAR #163443
Assistant U.S. Attorneys
Room 6100, PJKK Federal Building
300 Ala Moana Blvd.
Honolulu, Hawaii  96850
Telephone:  (808) 541-2850
Facsimile:  (808) 541-2958
Emails:   Michael.Nammar@usdoj.gov
          Micah.Smith@usdoj.gov
          Mark.Inciong@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CR. NO. 19-00099-08 DKW |
| Plaintiff, | ) MEMORANDUM OF PLEA <br> ) AGREEMENT |
| vs. | ) |
| | ) DATE:   January 6, 2022 |
| HARRY K. KAUHI,      (08) | ) TIME:   9:00 a.m. |
| aka "Harry Boy," | ) JUDGE: Hon. Derrick K. Watson |
| Defendant. | ) |

**MEMORANDUM OF PLEA AGREEMENT**

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the

UNITED STATES OF AMERICA, by its attorney, the United States Attorney for

the District of Hawaii, and the defendant, HARRY K. KAUHI, and his attorney,

MARK R. ZENGER, Esq., have agreed upon the following:

## THE CHARGES

1.    The defendant acknowledges that he has been charged in the Second

Superseding Indictment with violating Title 18, United States Code, Section

1962(d) (Count 1); Title 18, United States Code, Section 1958 (Count 7); Title 21,

United States Code, Sections 846, 841(b)(1)(A), 841(b)(1)(C), and 841(b)(1)(D)

(Count 16); Title 18, United States Code, Section 924(c)(1)(A)(i) (Count 17); Title

18, United States Code, Section 1951 (Count 18); and Title 18, United States Code,

Section 924(c)(1)(A)(ii) (Count 19).

2.    The defendant has read the charges against him contained in the

Second Superseding Indictment, and those charges have been fully explained to

him by his attorney.

3.    The defendant fully understands the nature and elements of the crimes

with which he has been charged.

## THE AGREEMENT

4.    The defendant will enter a voluntary plea of guilty to Counts 1 and 18

of the Second Superseding Indictment, which charge him with participating in a

racketeering conspiracy, referred to in the Second Superseding Indictment as the

"Miske Enterprise," in violation of Title 18, United States Code, Section 1962(d); and Hobbs Act robbery, in violation of Title 18, United States Code, Section 1951. In return, the government agrees to move to dismiss Counts 7, 16, 17 and 19 of the Second Superseding Indictment as to the defendant after sentencing.

5.     The defendant agrees that this Memorandum of Plea Agreement shall be filed and become part of the record in this case.

6.     The defendant enters these pleas because he is in fact guilty of participating in a racketeering conspiracy, referred to in the Second Superseding Indictment as the "Miske Enterprise," in violation of Title 18, United States Code, Section 1962(d); and Hobbs Act robbery, in violation of Title 18, United States Code, Section 1951 as charged in Counts 1 and 18 of the Second Superseding Indictment, and he agrees that his pleas are voluntary and not the result of force or threats.

## PENALTIES

7.     The defendant understands that the penalties for the offenses to which he is pleading guilty include:

a.     As to Count 1, a term of imprisonment of up to 20 years and a fine of up to $250,000, plus a term of supervised release up to 3 years.

3

b.      As to Count 18, a term of imprisonment of up to 20 years and a fine of up to $250,000, plus a term of supervised release up to 3 years.

c.      In addition, the Court must impose a $100 special assessment as to each count to which the defendant is pleading guilty.   The defendant agrees to pay $100 for each count to which he is pleading guilty to the District Court's Clerk's Office, to be credited to said special assessments, before the commencement of any portion of sentencing.   The defendant acknowledges that failure to make such full advance payment in a form and manner acceptable to the prosecution will allow, though not require, the prosecution to withdraw from this Agreement at its option.

d.   **Forfeiture.**

Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c) authorize forfeiture of any and all property, real or personal, that constitutes or is derived from proceeds traceable to the violation of Title 18, United States Code, Section 1951 alleged in Count 19 of the Second Superseding Indictment.

Title 18, United States Code, Section 1963 authorizes forfeiture of any interest the defendant has acquired or maintained in violation of Title 18, United States Code, Section 1962; of any interest in, security of, claim against, or property

4

or contractual right of any kind affording a source of influence over, any enterprise which the defendant established, controlled, conducted, or participated in the conduct of, in violation of Title 18, United States Code, Section 1962; and any property constituting, or derived from, any proceeds obtained directly or indirectly from racketeering activity in violation of Title 18, United States Code, Section 1962.

       e.    **Restitution.**   The Court must also award restitution pursuant to Title 18, United States Code, Section 3663A, to the persons and entities victimized by the defendant's offenses.   The defendant understands that the Court will determine the amounts of restitution to be ordered, as well as the persons and entities entitled to such restitution, with the assistance of the United States Probation Office.   The defendant agrees to pay restitution for all losses caused by the defendant's conduct, regardless of whether the counts of the Second Superseding Indictment associated with such losses will be dismissed as part of this Agreement.

## FACTUAL STIPULATIONS

    8.   The defendant admits the following facts and agrees that they are not a detailed recitation, but merely an outline of what happened in relation to the charges to which the defendant is pleading guilty:

a.      From at least in or about 2015 and continuing up to and

including June 2020, HARRY K. KAUHI, aka "Harry Boy" ("KAUHI"), the

defendant, and others known and unknown, were members and associates of the

"Miske Enterprise."   Members and associates of the Miske Enterprise operated

principally under the direction and protection of Michael J. Miske, Jr., who used

his power over members and associates of the Miske Enterprise, his reputation for

violence in the community, and the various corporate entities under his control to

enrich the members and associates of the Miske Enterprise and to protect their

criminal activities

b.      The Miske Enterprise, including its leadership, membership,

and associates, constituted an "enterprise" as that term is defined in Title 18,

United States Code, Section 1961(4), that is, a group of individuals and entities

associated in fact.   The Miske Enterprise was engaged in, and its activities

affected, interstate and foreign commerce.   The Miske Enterprise operated within

the District of Hawaii and elsewhere and constituted an ongoing organization

whose members and associates functioned as a continuing unit for a common

purpose of achieving the objectives of the Miske Enterprise.

c.      Beginning no later than in or about 2015, KAUHI and others

known and unknown, being persons employed by and associated with the Miske

Enterprise, willfully and knowingly combined, conspired, confederated, and agreed to together and with each other to violate the racketeering laws of the United States, namely, Title 18, United States Code, Section 1962(d), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the Miske Enterprise through a pattern of racketeering activity, as that term is defined in Title 18, United States Code, Sections 1961(1) and 1961(5).

      d.     The racketeering activity to which KAUHI and others agreed included:   (1) murder for hire, as alleged in Count 7 of the Second Superseding Indictment; (2) the felonious trafficking of controlled substances as alleged in Count 16 of the Second Superseding Indictment; and (3) acts involving robbery and firearms relating to interference with interstate commerce as alleged in Counts 17, 18 and 19 of the Second Superseding Indictment.

      e.     **Murder for Hire**.

At various times between in or around 2016 and 2017, KAUHI, along with other members of the Miske Enterprise, were offered contracts to commit and/or facilitate murder by Michael J. Miske, Jr. and engaged in attempts to commit those murders as requested by Miske.

For example, in or about 2016, KAUHI, along with Michael J. Miske, Jr., John B. Stancil, Jacob "Jake" Smith, Wayne Miller, Lance Bermudez and Dae Han

7

Moon, participated in a murder-for-hire conspiracy in which "Victim-1" was the target.   Miske placed the murder contract on Victim-1, who lives in the same Waimanalo area where Miske grew up, because Miske believed Victim-1 had cooperated with law enforcement and provided information about Miske.

Miske asked Miller to recruit a hitman to commit the murder of Victim-1 and Miller began having conversations with KAUHI in an attempt to recruit him to commit the murder.   KAUHI agreed to do a "home run", i.e. murder Victim-1, and accepted a down payment of several thousand dollars from Miske via Miller but never took any action toward committing the murder.

Also, in or around 2016-2017, Norman L. Akau, III and Wayne Miller, accepted an offer from Miske to murder Victim-12 in exchange for $50,000.   To carry out the murder, Miller and Akau tracked and followed Victim-12, with the assistance of a GPS tracking device Miller placed on Victim-12's vehicle. KAUHI assisted in the tracking of Victim-12 by acting as Akau's driver on multiple occasions as they followed Victim-12 to and from his residence and workplace.   More specifically, KAUHI was the driver when he and Akau followed Victim-12 to a plate lunch restaurant on Sand Island in Honolulu.   When Victim-12 came out of the restaurant, Akau, who was armed with a pistol, was about to pull the trigger in an attempt to shoot and kill Victim-12 when Miller ordered him

not to shoot because Miller had not been able to remove the GPS tracker he had placed on Victim-12's vehicle.

In 2017, Miske wanted a third individual, Victim-2, killed.   The reason Miske wanted Victim-2 killed was because Miske was angry that Victim-2 had disrespected him on social media.   On May 23, 2017, KAUHI, Miske, Stancil and Smith all traveled to Kualoa Ranch where Victim-2 was working.   Miske, Stancil and Smith confronted Victim-2 and Smith fired one shot but missed and Victim-2 was unharmed.   After the shooting, KAUHI and Smith got rid of the guns used in the attempted murder by giving them to another individual to dispose.

### f.   Offenses Involving the Felonious Trafficking of Controlled Substances

Between in or around 2016 and continuing to at least in or about August 2018, KAUHI conspired with other members and associates of the Enterprise to distribute and possess, with intent to distribute, controlled substances including methamphetamine.

For example, KAUHI "fronted", or supplied without immediate payment, several pounds of methamphetamine to Jacob Smith between around 2016 and around 2018.   During that period, KAUHI was known for packaging his methamphetamine in little white square boxes.

9

Additionally, after the 2016 robbery of Victim-4, described below, KAUHI took and possessed his share of the stolen methamphetamine with the intent to further distribute the drugs to another person(s).

Although Miske was not directly involved in KAUHI's drug trafficking activity, KAUHI benefitted from the protection he derived from being associated with Miske and the Miske Enterprise.

### g. Offenses Involving Robbery and Firearms Relating to Interference with Interstate Commerce

At various times between in or around 2016 and in or about 2018, KAUHI, along with other members of the Miske Enterprise, engaged in and/or facilitated robberies.   Often the targets of the robberies were drug dealers.

For example, in or about 2016, KAUHI, along with Jacob "Jake" Smith, Ashlin Akau, Norman L. Akau, III, John B. Stancil and Lance Bermudez, participated in the robbery of Victim-4, a suspected drug dealer, who was believed to be in possession of a large quantity of methamphetamine.   The group travelled in separate vehicles and forced the car in which Victim-4 was a passenger to stop on North School Street in Honolulu.   Smith, Bermudez and Stancil were in one vehicle, a black BMW 3-series sedan, driven by Bermudez.   Norman L. Akau III, who arrived in another vehicle, was dressed to impersonate an undercover police

officer and held a walkie-talkie and flashed a prop badge as he ordered Victim-4 out of the car in which he was riding.

Everyone present who participated in the robbery was armed with a gun except for Ashlin Akau.   Using the threat of force, the group obtained several pounds of methamphetamine from Victim-4.

After the robbery, KAUHI, Norman L. Akau, Ashlin Akau, Smith, Stancil, Bermudez and at least one other individual all met at the Waimanalo district park and divided the drugs amongst the group.

Although Miske did not direct the robbery, KAUHI and the others involved in the assault were emboldened by their association with Miske and the Miske Enterprise and relied on the protection they could count on as Enterprise members.

9.      Pursuant to CrimLR 32.1(a) of the Local Rules of the United States District Court for the District of Hawaii, the parties agree that the charges to which the defendant is pleading guilty adequately reflect the seriousness of the actual offense behavior and that accepting this Agreement will not undermine the statutory purposes of sentencing.

## SENTENCING STIPULATIONS

10.      Pursuant to CrimLR 32.1(b) of the Local Rules of the United States District Court for the District of Hawaii and Section 6B1.4 of the Sentencing

Guidelines, the parties stipulate to the following for the purpose of the sentencing of the defendant in connection with this matter:

a.      As of the date of this agreement, it is expected that the defendant will enter a plea of guilty prior to the commencement of trial, will truthfully admit his involvement in the offense and related conduct, and will not engage in conduct that is inconsistent with such acceptance of responsibility.   If all of these events occur, and the defendant's acceptance of responsibility continues through the date of sentencing, a downward adjustment of 2 levels for acceptance of responsibility will be appropriate.   *See* U.S.S.G. § 3E1.1(a) and Application Note 3.

b.      The United States Attorney agrees that the defendant's agreement herein to enter into a guilty plea constitutes notice of intent to plead guilty in a timely manner, so as to permit the government to avoid preparing for trial as to the defendant.   Accordingly, the United States Attorney anticipates moving in the Government's Sentencing Statement for a one-level reduction in sentencing offense level pursuant to Guideline § 3E1.1(b)(2), if the defendant is otherwise eligible.   The defendant understands that notwithstanding its present intentions, and still within the Agreement, the prosecution reserves the rights (1) to argue to the contrary in the event of receipt of new information relating to those

12

issues, and (2) to call and examine witnesses on those issues in the event that either the United States Probation Office finds to the contrary of the prosecution's intentions or the Court requests that evidence be presented on those issues.

11.     The parties agree that notwithstanding the parties' Agreement herein, the Court is not bound by any stipulation entered into by the parties but may, with the aid of the presentence report, determine the facts relevant to sentencing.   The parties understand that the Court's rejection of any stipulation between the parties does not constitute a refusal to accept this Agreement since the Court is expressly not bound by stipulations between the parties.

12.     The parties represent that as of the date of this agreement there are no material facts in dispute.

### APPEAL/COLLATERAL REVIEW

13.     The defendant is aware that he has the right to appeal his conviction and the sentence imposed.   The defendant knowingly and voluntarily waives the right to appeal, except as indicated in subparagraph "b" below, his conviction and any sentence within the Guidelines range as determined by the Court at the time of sentencing, and any lawful restitution or forfeiture order imposed, or the manner in which the sentence, restitution, or forfeiture order was determined, on any ground whatsoever, in exchange for the concessions made by the prosecution in this

Agreement.   The defendant understands that this waiver includes the right to assert any and all legally waivable claims.

      a.    The defendant also waives the right to challenge his conviction or sentence or the manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, United States Code, Section 2255, except that the defendant may make such a challenge (1) as indicated in subparagraph "b" below, or (2) based on a claim of ineffective assistance of counsel.

      b.    If the Court imposes a sentence greater than specified in the guideline range determined by the Court to be applicable to the defendant, the defendant retains the right to appeal the portion of his sentence greater than specified in that guideline range and the manner in which that portion was determined and to challenge that portion of his sentence in a collateral attack.

      c.    The prosecution retains its right to appeal the sentence and the manner in which it was determined on any of the grounds stated in Title 18, United States Code, Section 3742(b).

## FINANCIAL DISCLOSURE

14.    In connection with the collection of restitution or other financial obligations that may be imposed upon him, the defendant agrees as follows:

14

a.     The defendant agrees to fully disclose all assets in which he has any interest or over which he exercises control, directly or indirectly, including any assets held by a spouse, nominee, or third party.   The defendant understands that the United States Probation Office (USPO) will conduct a presentence investigation that will require the defendant to complete a comprehensive financial statement.   To avoid the requirement of the defendant completing financial statements for both the USPO and the government, the defendant agrees to truthfully complete a financial statement provided to the defendant by the United States Attorney's Office.   The defendant agrees to complete the disclosure statement and provide it to the USPO within the time frame required by the United States Probation officer assigned to the defendant's case.   The defendant understands that the USPO will in turn provide a copy of the completed financial statement to the United States Attorney's Office.   The defendant agrees to provide written updates to both the USPO and the United States Attorney's Office regarding any material changes in circumstances, which occur prior to sentencing, within seven days of the event giving rise to the changed circumstances.   The defendant's failure to timely and accurately complete and sign the financial statement, and any written update thereto, may, in addition to any other penalty or

remedy, constitute the defendant's failure to accept responsibility under U.S.S.G

§ 3E1.1.

b.      The defendant expressly authorizes the United States

Attorney's Office to obtain his credit report.   The defendant agrees to provide

waivers, consents, or releases requested by the United States Attorney's Office to

access records to verify the financial information, such releases to be valid for a

period extending 90 days after the date of sentencing.   The defendant also

authorizes the United States Attorney's Office to inspect and copy all financial

documents and information held by the USPO.

c.      Prior to sentencing, the defendant agrees to notify the Financial

Litigation Unit of the U.S. Attorney's Office before making any transfer of an

interest in property with a value exceeding $1,000 owned directly or indirectly,

individually or jointly, by the defendant, including any interest held or owned

under any name, including trusts, partnerships, and corporations.

## IMPOSITION OF SENTENCE

15.    The defendant understands that the District Court in imposing

sentence will consider the provisions of the Sentencing Guidelines.   The defendant

agrees that there is no promise or guarantee of the applicability or non-applicability

of any Guideline or any portion thereof, notwithstanding any representations or predictions from any source.

16.    The defendant understands that this Agreement will not be accepted or rejected by the Court until there has been an opportunity by the Court to consider a presentence report, unless the Court decides that a presentence report is unnecessary.   The defendant understands that the Court will not accept an agreement unless the Court determines that the remaining charges adequately reflect the seriousness of the actual offense behavior and accepting the Agreement will not undermine the statutory purposes of sentencing.

## **WAIVER OF TRIAL RIGHTS**

17.    The defendant understands that by pleading guilty he surrenders certain rights, including the following:

a.    If the defendant persisted in a plea of not guilty to the charges against him, then he would have the right to a public and speedy trial.   The trial could be either a jury trial or a trial by a judge sitting without a jury.   The defendant has a right to a jury trial.   However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the prosecution, and the judge all must agree that the trial be conducted by the judge without a jury.

b.      If the trial is a jury trial, the jury would be composed of twelve laypersons selected at random.   The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges.   The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty.   The jury would be instructed that the defendant is presumed innocent, and that it could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt.

c.      If the trial is held by a judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not he or she was persuaded of the defendant's guilt beyond a reasonable doubt.

d.      At a trial, whether by a jury or a judge, the prosecution would be required to present its witnesses and other evidence against the defendant.   The defendant would be able to confront those prosecution witnesses and his attorney would be able to cross-examine them.   In turn, the defendant could present witnesses and other evidence on his own behalf.   If the witnesses for the defendant would not appear voluntarily, the defendant could require their attendance through the subpoena power of the Court.

e.    At a trial, the defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify.

18.    The defendant understands that by pleading guilty, he is waiving all of the rights set forth in the preceding paragraph.   The defendant's attorney has explained those rights to him, and the consequences of the waiver of those rights.

## USE OF PLEA STATEMENTS

19.    If, after signing this Agreement, the defendant decides not to plead guilty as provided herein, or if the defendant pleads guilty but subsequently makes a motion before the Court to withdraw his guilty plea and the Court grants that motion, the defendant agrees that any admission of guilt that he makes by signing this Agreement or that he makes while pleading guilty as set forth in this Agreement may be used against him in a subsequent trial if the defendant later proceeds to trial.   The defendant voluntarily, knowingly, and intelligently waives any protection afforded by Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence regarding the use of statements made in this Agreement or during the course of pleading guilty when the guilty plea is later withdrawn.   The *only* exception to this paragraph is where the defendant fully complies with this Agreement but the Court nonetheless rejects it.

19

Under those circumstances, the United States may not use those statements of the defendant for any purpose.

20.     The defendant understands that the prosecution will apprise the Court and the United States Probation Office of the nature, scope and extent of the defendant's conduct regarding the charges against him, related matters, and any matters in aggravation or mitigation relevant to the issues involved in sentencing.

## **COOPERATION**

21.     The defendant agrees that he will fully cooperate with the United States.

a.      The defendant agrees to testify truthfully at any and all trials, hearings, or any other proceedings at which the prosecution requests him to testify, including, but not limited to, any grand jury proceedings, trial proceedings involving co-defendants and others charged later in the investigation, sentencing hearings, and related civil proceedings.

b.      The defendant agrees to be available to speak with law enforcement officials and representatives of the United States Attorney's Office at any time and to give truthful and complete answers at such meetings, but he understands he may have his counsel present at those conversations, if he so desires.

c.      The defendant agrees he will not assert any privilege to refuse to testify at any grand jury, trial, or other proceeding, involving or related to the crimes charged in this Second Superseding Indictment or any subsequent charges related to this investigation, at which the prosecution requests him to testify.

d.      The defendant agrees that his sentencing date may be delayed based on the government's need for the defendant's continued cooperation, and agrees not to object to any continuances of the defendant's sentencing date sought by the United States.

e.      Pursuant to Section 1B1.8(a) of the Sentencing Guidelines, the prosecution agrees that self-incriminating information provided pursuant to this Agreement to cooperate will not be used in determining the applicable guideline range, except as may be provided in this Agreement and under Section 1B1.8(b) of the Sentencing Guidelines.

22.      In the event that the defendant does not breach any of the terms of this Agreement but the Court nonetheless refuses to accept the Agreement after the defendant has made statements to law enforcement authorities or representatives of the United States Attorney's Office pursuant to this Agreement, the prosecution agrees not to use said statements in its case-in-chief in the trial of the defendant in this matter.   The defendant understands that this does not bar the use of

21

information and evidence derived from said statements or prohibit the use of the statements by the prosecution in cross-examination or rebuttal.

23.     Pursuant to Guidelines § 5Kl.1 and Rule 35(b) of the Federal Rules of Criminal Procedure, the prosecution may move the Court to depart from the Guidelines on the ground that the defendant has provided substantial assistance to authorities in the investigation or prosecution of another person who has committed an offense.   The defendant understands that:

a.     The decision as to whether to make such a request or motion is entirely up to the prosecution.

b.     This Agreement does not require the prosecution to make such a request or motion.

c.     This Agreement confers neither any right upon the defendant to have the prosecution make such a request or motion, nor any remedy to the defendant in the event the prosecution fails to make such a request or motion.

d.     Even in the event that the prosecution makes such a request or motion, the Court may refuse to depart from the Guidelines or to impose a sentence below the minimum level established by statute.

24.     The defendant and his attorney acknowledge that, apart from any written proffer agreements, if applicable, no threats, promises, agreements or

conditions have been entered into by the parties other than those set forth in this Agreement, to induce the defendant to plead guilty.   Apart from any written proffer agreements, if applicable, this Agreement supersedes all prior promises, agreements or conditions between the parties.

25.    To become effective, this Agreement must be signed by all signatories listed below.


/   /   /


/   /   /


/   /   /


/   /   /


/   /   /


/   /   /

26.    Should the Court refuse to accept this Agreement, it is null and void

and neither party shall be bound thereto.

AGREED:


Dated: 12/13/2021

JUDITH A. PHILIPS
Acting United States Attorney
District of Hawaii


Dated: 12/13/2021

MICHAEL D. NAMMAR
MICAH SMITH
MARK A. INCIONG
Assistant U.S. Attorneys


Dated: 12/10/2021

HARRY K. KAUHI
aka "Harry Boy"
Defendant


Dated: 12/10/21

MARK R. ZENGER
Attorney for Defendant


24